**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

EDY RODRIGUEZ,

               Plaintiff,

         v.

J. CROSS, Sergeant,
Clinton Correctional Facility; et al.,

               Defendants.

_____

No. 15-CV-1079
(GTS/CFH)

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**APPEARANCES:**

Edy Rodriguez
8951602009
Plaintiff pro se
Anna M. Kross Center (AMKC)
18-18 Hazen Street
East Elmhurst, NY 11370

HON. ERIC T. SCHNEIDERMAN
Attorney General for the
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224

**OF COUNSEL:**

RYAN E. MANLEY, ESQ.
Assistant Attorney General

CHRISTOPHER J. HUMMEL, ESQ.
Assistant Attorney General

## REPORT-RECOMMENDATION AND ORDER[1]

     Plaintiff pro se Edy Rodriguez ("Plaintiff"), an inmate who was, at all relevant times, in

the custody of the New York Department of Corrections and Community Supervision

---

    [1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that Sergeant ("Sgt.") J. Cross, Sgt. R. Furnia, Correction Officer ("C.O.") G. Falcon, and C.O. J. Roberts (collectively "Defendants") violated his constitutional rights under the First and Eighth Amendments. Dkt. No. 1 ("Compl.").[2]

Presently pending is defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56(a) for plaintiff's failure to exhaust administrative remedies before commencing this action. Dkt. No. 26. Plaintiff filed a response in opposition to defendants' motion. Dkt. No. 34. Defendants filed a reply. Dkt. No. 39.

## I. Background

The facts are reviewed in the light most favorable to plaintiff as the non-moving party. See subsection II(A) infra. At the relevant times giving rise to plaintiff's claims, plaintiff was an inmate incarcerated at Clinton Correctional Facility ("Clinton").

On July 10, 2014, plaintiff wrote a letter to Sgt. Cross "complaining about being harassed" by staff at Clinton. Compl. at 4. Plaintiff further alleges that he was taken out of his cell on July 14, 2014, brought to the second floor of the facility's hospital, and subjected to a "beating" by defendants. Compl. at 4-5. Sgt. Cross grabbed him by the hair; Sgt. Furnia punched him; and C.O. Falcon and C.O. Roberts punched him in the face, back, and neck. Id. at 4. Plaintiff alleges "each one of the blows" he suffered was from the named

---

[2] On March 27, 2017, this Court granted plaintiff an extension until May 1, 2017 to file a motion to amend his complaint. Dkt. No. 38. The deadline has expired and plaintiff has not filed a motion to amend his complaint.

defendants, as well as other officers he cannot identify by name.  Id. at 5-6.  After the

alleged incident, plaintiff was seen by a nurse with "about ten" officers present in the room,

where he admits "having no choice," but to tell the nurse that officers had just beat him up.

See Affirmation of Christopher J. Hummel ("Hummel Aff."), Dkt. No. 26-1, Exhibit ("Exh.") A[3]

at 59-60.[4]

    While at Clinton, plaintiff filed five grievances.  See Declaration of Christine Gregory

("Gregory Decl."), Dkt. No. 26-3 Exh. A at 6.  Only one grievance was appealed.

Declaration of Jeffrey Hale ("Hale Decl."), Dkt. No. 26-2 ¶¶ 12-13.  The subject matter of the

single appealed grievance does not concern the matter before the Court.  Id. ¶ 12.  The

only grievance filed that is pertinent to the pending motion was filed on July 29, 2014.  See

Gregory Decl. Exh. B at 8.  This grievance alleges that plaintiff suffered  "an assault by

(C.O.)" and, following the assault, did not receive appropriate medical care.  Id.  The

investigation into the July 29, 2014 grievance concluded that plaintiff saw his medical

provider, and medicine was given to him without any further action.  Id. at 10.  The

investigation did not mention anything about an assault.  Id.

    Plaintiff alleges that he filed a grievance regarding the incidents described in his

complaint, but an unidentified Sergeant destroyed the grievance.  Compl. at 2.  He also

alleges that he was beaten by correction staff for filing the grievance.  Id.  Plaintiff also

states that he filed a handwritten grievance (not on a grievance form) on July 19, 2014,

regarding the July 14, 2014 incident.  See Hummel Aff. Exh. A at 93.  Plaintiff alleges that

---

[3]  Exhibit A to the Affirmation of Christopher J. Hummel is a transcript of plaintiff's deposition, held on September 19, 2016 at Great Meadow Correctional Facility.  See Dkt. No. 26-1.

[4]  When citing documents within the record, the Court uses the page numbers generated by CM/ECF.

he sent a copy of this grievance to his mother and instructed her to send it directly to Clinton "[f]rom outside." Id. at 94. Defendants have no record of this grievance being filed. See Gregory Decl. Exh. A at 6. Plaintiff never inquired further about the July 19, 2014 grievance, but maintains that he has handwritten copies of the grievance since he did not have access to carbon paper when he originally drafted this grievance. See Hummel Aff. Exh. A at 94-95, 96-97. The July 19, 2014 grievance was drafted while plaintiff was in keeplock. Id. at 93.

Plaintiff further alleges, in his response to defendants' motion for summary judgment, that defendants have total control over facility mail and any failure to exhaust administrative remedies occurred because defendants strategically removed grievances from the mailbox to cover up their use of excessive force against plaintiff. See Dkt. No. 34 at 4. Plaintiff further alleges a general belief that there is a pattern of prison officials threatening and retaliating against inmates for filing grievances, thus making administrative remedies unavailable. Id. at 6. Lastly, plaintiff alleges that there is an "unwritten posture" at Clinton where inmates are not given grievance forms unless they provide a clear description of their complaint, or the complaint does not involve staff misconduct. Id. at 8.

## II.  Discussion[5]

Plaintiff alleges that defendants retaliated against him in violation of the First Amendment, used excessive force against him in violation of the Eighth Amendment, and violated his Due Process rights under the First and Fourteenth Amendments. See Compl.

---

[5] All unpublished opinions cited to by the Court in this Report-Recommendation and Order are, unless otherwise noted, attached to this Report-Recommendation and Order.

at 7.  Defendants argue that plaintiff's complaint should be dismissed in its entirety as plaintiff failed to exhaust his administrative remedies with respect to the causes of action outlined in the Complaint.  <u>See</u> Defendants' Memorandum of Law, Dkt. No. 26-5 at 3.

### A.  Legal Standard For Motions Pursuant to Fed. R. Civ. P. 56(a)

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion.  FED. R. CIV. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). "In determining whether summary judgment is appropriate, [the Court] will resolve all ambiguities and draw all reasonable inferences against the moving party."  <u>Skubel v. Fuoroli</u>, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Carey v. Crescenzi</u>, 923 F.2d 18, 19 (2d Cir. 1991) (quoting <u>Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986)).  A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material fact.  <u>Carey</u>, 923 F.2d at 19.  "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is

proper." Gallo v. Prudential Services, Ltd. Partnership, 22 F.3d, 1219, 1224 (2d Cir. 1994).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally," . . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191–92 (2d Cir. 2008).

## B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82 (2006). The exhaustion requirement applies "'to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" Mauldin v. Kiff, No. 11-CV-107-A, 2014 WL 2708434, at *4 (W.D.N.Y. June 16, 2014) (quoting Porter, 534 U.S. at 532). Further, the exhaustion requirement applies even where the prisoner seeks

relief not available in the administrative grievance process, such as monetary damages. Porter, 534 U.S. at 524. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted). Until recently, courts in this District followed a three-part test established by the Second Circuit in Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004). Under the test established in Hemphill, a plaintiff's failure to exhaust could be excused if a plaintiff established that his or her failure to exhaust was justified by "special circumstances." Id. However, the Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, 136 S. Ct. 1850, 1862 (2016). As such, the special circumstances exception previously promulgated by the Second Circuit in Hemphill is no longer consistent with the statutory requirements of the PLRA. Williams v. Priatno, 829 F.3d 118, 123 (2d Cir. 2016).

Although the Supreme Court's decision in Ross eliminates the "special circumstances" exception promulgated by Hemphill, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, 136 S. Ct. at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an administrative procedure is

unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

Here, there is no genuine dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5. First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged incident. Id. at § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. at § 701.5(b)(1). If no informal resolution occurs, the Inmate Grievance Review Committee ("IGRC") must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c)(1). If the superintendent's determination is unfavorable to the inmate, the inmate may appeal to the Central Office Review Committee ("CORC") within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the

-8-

appeal was received." Id. § 701.5(d)(3)(ii).

## 1. Application

First, the Court will address whether there is any genuine dispute that plaintiff failed to exhaust his administrative remedies. Courts in the Second Circuit have consistently held that any informal resolutions or relief outside of the administrative procedures do not satisfy exhaustion requirements. See, e.g., Macias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007) (holding that regardless of whether prison officials know of plaintiff's complaints in a "substantive sense," procedural exhaustion of remedies must still occur); Ruggiero v. Cty. of Orange, 467 F.3d 170, 177-78 (2d Cir. 2006); Perez v. City of N.Y., No. 14 CIV. 07502(LGS), 2015 WL 3652511, at *4 (S.D.N.Y. June 11, 2015) ("Plaintiff's allegation that he advised others of his grievance does not excuse his failure to exhaust the administrative process.").

Here, subsequent to the alleged events giving rise to the matter before the Court, plaintiff states he and family members contacted the Inspector General's Office to complain about prison conditions and concerns of plaintiff's safety. See Hummel Aff. Exh. A at 89, 90. Such correspondence does not satisfy exhaustion and falls outside of the grievance procedures. See Geer v. Chapman, No. 9:15-CV-952(GLS/ATB), 2016 WL 6091699, at *5 (N.D.N.Y. Sept. 26, 2016), report and recommendation adopted, No. 9:15-CV-952 (GLS/ATB), 2016 WL 6090874 (N.D.N.Y. Oct. 18, 2016) ("It is well-settled that writing letters to prison officials, or other officials, is insufficient to properly exhaust administrative remedies."); Salmon v. Bellinger, No. 9:14-CV-0827(LEK/DJS), 2016 WL 4411338, at *4

(N.D.N.Y. July 5, 2016), <u>report and recommendation adopted by</u>, No. 9:14-CV-0827(LEK/DJS), 2016 WL 4275733 (N.D.N.Y. Aug. 12, 2016) (holding that letters sent to the Inspector General do not satisfy exhaustion procedures).

After the alleged incident of excessive force, plaintiff was seen by a nurse in a room with "about ten" officers present, where he admits "having no choice" but to tell the nurse that the officers had beat him up. Hummel Aff. Exh. A at 59-60. Plaintiff alleges filing grievances on July 19, 2014 and July 29, 2014 that mention the assault. <u>See id.</u> at 93; Gregory Decl. Exh. B at 6, 8-10. Defendants state that there is no record of appeal on any grievances pertaining to the alleged assault. Gregory Decl. ¶ 15. While plaintiff's complaints were aired verbally and in writing, plaintiff failed to utilize the procedures required to exhaust administrative remedies. <u>Timmons v. Schriro</u>, No. 14-CV-6606(RJS), 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) ("[T]he law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA."). Thus, there is no genuine dispute that plaintiff failed to exhaust administrative remedies.

As a result, the Court must determine whether administrative remedies were in fact available to plaintiff. <u>See Ross</u>, 136 S. Ct. at 1858 ("An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones"); <u>Mena v. City of New York</u>, No. 13-cv-2430(RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016) (citing <u>Ross</u>, 136 S. Ct. at 1862) ("[T]he lone surviving exception to the PLRA's exhaustion requirement is that embedded in its text: that an inmate need only exhaust those administrative remedies that are 'available' to him."). Plaintiff sets forth three factual arguments as to why administrative remedies were not available to him. First, plaintiff alleges that the grievance procedures

were unavailable to him because he was denied access to paper and writing instruments.

See Compl. at 3.  Next, plaintiff alleges that he was physically beaten when he attempted to

take steps to utilize the grievance process.  Id.  Lastly, plaintiff suggests that he never

received a response to his grievance, his mail was tampered with, and his letters were not

delivered.  See Hummel Aff. Exh. A at 91-92, 94.


### a. Lack of Paper and Pen to Complete Grievance Procedures

The third prong of Ross is triggered by plaintiff's argument that he was denied

access to pen and paper, as it shows an alleged attempt to stop him from taking part in the

grievance process.  When a plaintiff-inmate asserts that a defendant-facility withheld pens,

courts have granted summary judgment against a plaintiff when "the record does not show

that "[p]laintiff indicated to prison officials that he needed a pen so he could file a grievance

or that prison officials refused to provide him a pen for this purpose."  Mena v. City of N.Y.,

No. 12 CIV. 6838(GBD), 2013 WL 3580057, at *2 (S.D.N.Y. July 10, 2013).  When an

inmate argues that a correction officer denies him access to pen or paper, even assuming

the allegations are true, courts examine whether the inmate was drafting other documents

during the same time period, or whether they were able to access materials from other

sources.  See Williams v. Ramos, No. 13 CV 826(VLB), 2015 WL 864888, at *3 (S.D.N.Y.

Feb. 9, 2015) ("It is unclear how plaintiff was able to submit [other] grievances if defendants

took his pens and paper and threatened him . . . Moreover, when defendants allegedly stole

his pens and papers, plaintiff testified he was able to file grievances on his commissary

sheet."); Lahoz v. Orange Cty. Jail, No. 08 CIV. 4364(RWS), 2010 WL 1789907, at *3

(S.D.N.Y. Apr. 29, 2010) (stating that an inmate was not deprived of writing materials when he drafted a handwritten letter during the same time period as the grievance process).

Here, the Court notes contradictory statements within the complaint pertaining to plaintiff's access to writing instruments or paper. When prompted as to why facts relating to the complaint were not presented in the grievance program, plaintiff asserts that he was denied a paper or pen. Compl. at 3. However, plaintiff also states that he wrote a grievance, the grievance was destroyed by a Sergeant, and he was beaten in retaliation for writing the grievance. See id. at 2. The only time plaintiff asserts that he was denied a paper and pen was when he was taken to the Special Housing Unit ("SHU")[6] on July 14, 2014 after the alleged incident. See id. at 3; Hummel Aff. Exh. A at 68. In fact, records indicate that plaintiff filed grievances on July 19, July 29, August 4, and November 19 of that same year.[7] Gregory Decl. Exh. A at 6. Plaintiff does not allege any difficulties obtaining a pen and paper after the July 2014 SHU stay, but rather, admits having "a piece of paper that an inmate had and a pen" on at least one occasion. See id. at 94.

Lastly, in his response to defendants' motion for summary judgment, plaintiff alleges that there is an "unwritten posture" at Clinton where inmates are not given grievance forms unless they provide a clear description of their complaint, or if their complaint does not involve staff misconduct. Dkt. No. 34 at 8. Such general allegations without any factual support are insufficient to show that procedures were unavailable, coupled with the fact that,

---

[6] SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population. . . ." N.Y. COMP. CODES R. & REGS. tit. 7, § 300.2(b). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. Id. at pt. 301.

[7] Both the August and November grievances are unrelated to the cause of action before the Court. Gregory Decl. Exh. A at 6.

grievances can and have been submitted by plaintiff on plain paper.  N.Y. COMP. CODES R.

& REGS. tit. 7, § 701.5(a)(1) ("If this form is not readily available, a complaint may be

submitted on plain paper."); see Veloz v. N.Y., 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004),

aff'd, 178 F. App'x 39 (2d Cir. 2006) (granting summary judgment where plaintiff does not

allege that any specific officer thwarted his efforts to timely file a grievance); Hummel Aff.

Exh. A at 94.

Even if the Court assumes that plaintiff was denied access to pen and paper while in

the SHU, the grievances filed in July 2014 were filed within the twenty-one calendar days

required, and his subsequent failure to exhaust administrative remedies regarding those

grievances is unaffected by any denial of pen and paper that occurred in the past.  Thus,

the Court rejects plaintiff's argument as there is no genuine dispute of fact that

administrative remedies were unavailable due a lack of writing instruments or paper.


### b. Allegation that Grievance Was Not Received and Mail Tampering

Courts have long held that where an inmate does not receive a response to a written

grievance, the inmate must appeal to the next level of review.  See Khudan v. Lee, No. 12-

cv-8147(RJS), 2015 WL 5544316, at *5 (S.D.N.Y. Sept. 17, 2015) (dismissing a plaintiff's

complaint where plaintiff failed to appeal to the next level of review after not receiving a

response to his filed grievance); see also Veloz v. New York, 339 F. Supp. 2d 505, 516

(S.D.N.Y. 2004), aff'd, 178 F. App'x 39 (2d Cir. 2006) ("[P]laintiff's allegation that these

particular grievances were misplaced or destroyed by correctional officers ultimately does

not relieve him of the requirement to appeal these claims to the next level once it became

clear to him that a response to his initial filing was not forthcoming.").

However, recent decisions by courts in the Second Circuit have addressed the availability of administrative remedies when an inmate's grievance is unfiled and unanswered. These cases have focused on the second prong of the Ross test, where a grievance process becomes unusable for an inmate. Ross , 136 S. Ct. at 1859. In Williams v. Priatno, the Second Circuit held that when an inmate's grievance is not filed, "the regulations plainly do not describe a mechanism for appealing a grievance." See 829 F.3d at 126. Thus, "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it." Id. The Williams ruling relied upon a scenario where an inmate is housed in a SHU and personally gives a grievance to a correction officer, as required by grievance procedures. Id. at 120-21. Additionally, adding to the "opaque" nature of the procedures, the plaintiff in Williams followed up when he did not receive a response after a week, but was subsequently transferred one week later without any resolution or knowledge of his grievance being filed. Williams, 829 F.3d at 120-21. Ultimately, the Williams Court held that "in giving his grievance to the correction officer, [the plaintiff] exhausted all administrative remedies that were available to him." Id. at 126.

Here, in his September 19, 2016 deposition, plaintiff sets forth facts suggesting prison staff filtered his mail and "when they [saw] grievances" they were thrown to the side, not delivered, "and were never [] seen." See Hummel Aff. Exh. A at 91-92. The grievance that plaintiff allegedly filed on July 19, 2014 was sent to the Clinton grievance office by his mother. Id. at 94. Plaintiff never received a response on the grievance or followed up on the status of the grievance. Id. Without concrete facts, plaintiff states that his grievance was not resolved because "no civilian . . . picks up your grievances. It's officers." Id. at 91.

-14-

Plaintiff's allegations of mail tampering are conclusory and weakened by the fact that other correspondence, including complaints, were sent and received during the general time period material to the issues before the Court. Johnson v. Fraizer, No. 16-CV-6096(CJS), 2016 WL 7012961, at *4 (W.D.N.Y. Dec. 1, 2016) ("Plaintiff makes only a conclusory statement that his mailing was not allowed to leave the facility[,] . . . his contention . . . is belied by his admission that he was able to send other complaints about the matter to various New York State officials at around the same time."); see Hummel Aff. Exh. A at 89, 94 (providing an example where plaintiff successfully sent legal mail to his mother).

In plaintiff's response in opposition to defendants' motion for summary judgment, he raises general complaints about defendants having total control over facility mail and defendants strategically removing grievances from the mailbox to cover up their excessive use of force against plaintiff and other inmates. See Dkt. No. 34 at 2. Plaintiff's bare assertions do not excuse exhaustion requirements. Courts in this Circuit have continuously held that mere contentions or speculation of grievances being misplaced by officers do not create a genuine issue of material fact when there is no evidence to support the allegations. Khudan, 2016 WL 4735364, at *6 (citations omitted) (holding that under Ross, mere stand alone contentions of mail tampering without support and particularity cannot deem administrative remedies unavailable); Veloz, 339 F. Supp. 2d at 516 (holding that summary judgment is proper where the plaintiff contends that officers misplaced his grievances, but offers no evidence to support his claim). In Khudan, the court did not consider or rely upon conclusory allegations when plaintiff attested he "was informed by other [unnamed] inmates that grievances routinely go 'missing.'" Khudan, 2016 WL 4735364, at *6. This is similar to plaintiff's conclusory theory of injustice and displeasure with mail procedures, and other

"recurrent pattern[s]" in New York correctional facilities.   Dkt. No. 34 at 2, 4; see Khudan, 2016 WL 4735364, at *6 ("Plaintiff's accusations, which 'stand alone' and are 'unsupported,' are insufficient to withstand summary judgment.") (quoting Bolton v. City of N.Y., No. 13-CV-5749(RJS), 2015 WL 1822008, at *2 (S.D.N.Y. Apr. 20, 2015)).

Courts have denied a defendant's motion for summary judgment when faced with an unanswered and unfiled grievance drafted in SHU.   See, e.g., Juarbe v. Carnegie, No. 9:15-CV-01485(MAD/DEP), 2016 WL 6901277, at *1, 4 (N.D.N.Y. Nov. 23, 2016).   This is distinguishable from plaintiff's alleged July 19, 2014 grievance drafted in keeplock.[8]   Such a difference in inmate housing supports the notion that, "the Second Circuit's decision hinged on the 'extraordinary circumstances' specific to the case before it."   Mena v. City of N.Y., No. 13-CV-2430(RJS), 2016 WL 3948100, at *5 (S.D.N.Y. July 19, 2016) (quoting Williams, 829 F.3d at 119);  see N.Y. COMP. CODES R. & REGS. tit. 7, § 701.7 (explaining that there are different grievance filing procedures for an inmate housed in the SHU).   Inmates not housed in the SHU are in a different position to SHU inmates when determining if grievance procedures are "essentially unknowable" or unavailable.   Id. at *5 (quoting Ross v. Blake, 136 S. Ct. at 1859).

Plaintiff never followed up on the July 19, 2014 grievance.   Hummel Aff. Exh. A at 94-95.   However, on July 29, 2014, he filed a grievance in the facility that included medical complaints, but also a reference to the alleged assault on July 14, 2014.   See Gregory Decl. Exh. B at 8.   The Clinton grievance department received and responded to this grievance.

---

[8]   "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities."   Green v. Bauvi, 46 F.3s 189, 192 (2d Cir. 1995); N.Y. COMP. CODES R. & REGS. tit. 7, § 301.6.

Id.  This grievance was not appealed.  Id. ¶ 15.  Even assuming, as the Court must on this

motion, that plaintiff's allegations of mail tampering are true, he did not exhaust his

administrative remedies when he failed to appeal the July 29, 2014 grievance to the next

level of review.  The fact that this grievance was subsequently filed and not appealed within

close proximity to the July 19, 2014 grievance, coupled with three unrelated grievances filed

within the next year, demonstrates that plaintiff's situation does not rise to the level where

the grievance process is "opaque," unavailable, or unascertainable.  See Hill v. Tisch, No.

02CV3901(DRH/AYS), 2016 WL 6991171, at *7 (E.D.N.Y. Nov. 29, 2016) (finding that the

plaintiff failed to demonstrate that the grievance "procedures were essentially unknowable");

Gregory Decl. Exh. A at 6.


### c. Allegation that Plaintiff Suffered Retaliation and Physical Beatings

Plaintiff's pleadings also suggest an inquiry under the third prong of Ross, whether

"machination, misrepresentation, or intimidation" occurred.  See Ross, 136 S. Ct. at 1860.

Specifically, plaintiff alleges that he did not comply with the grievance procedures because

he was subjected to physical beatings, retaliation, and intimidation after complaining about

conditions at Clinton.  See Compl. at 3, 4, 7.  For these reasons, he believed the grievance

procedures were unavailable.  See id. at 2-3.

Specific threats of retaliation or intimidation by prison employees can render

administrative remedies unavailable.  Ross, 136 S. Ct. at 1860 & n.3.  However, a

generalized fear of retaliation is insufficient to overcome a failure to exhaust administrative

remedies.  Salmon, 2016 WL 4411338, at *5.  Estoppel is found where "verbal and physical

threats of retaliation, physical assault, denial of grievance forms or writing implements, and

transfers" occur showing that defendants acted affirmatively to  prevent an inmate from availing him or herself of the grievance procedures.  Id. at *5 (quoting Amador v. Andrews, 655 F.3d 89, 103 (2d Cir. 2011)).  In Riles, the Second Circuit affirmed a district court's ruling that prison officials' alleged threats did not interfere with exhaustion efforts when plaintiff stated he was threatened "if he pushed the issue," but then subsequently filed a grievance in spite of the alleged threats.  See Riles v. Buchanan, 656 F. App'x 577, 581 (2d Cir. 2016) (summary order).

Relying on Ross, courts have carved out factual limitations to the third prong of unavailability concerning fear of retaliation.  See, e.g., Aviles v. Tucker, No. 14-CV-08636(NSR), 2016 WL 4619120, at *3-4 (S.D.N.Y. Sept. 1, 2016) (citing Ross, 136 S. Ct. at 1860).  In Aviles, the court noted a longstanding rule that general beliefs of retaliation or fears do not excuse the exhaustion requirement.  Aviles, 2016 WL 4619120, at *4 (citations omitted).  Circumstances that have met the threshold of unavailability by means of intimidation have included widespread beatings with assertions of fear for one's life, in conjunction with the plaintiff withholding all complaints until he was transferred to a different facility.  See, e.g., id. (quoting Thomas v. Cassleberry, No. 03-cv-6394L, 2007 WL 1231485, at *2 (W.D.N.Y. Apr. 24, 2007)).  Allegations of threats are conclusory where a plaintiff's allegation "does not indicate who threatened him, when he was threatened, or how he was threatened."  See Johnson v. Fraizer, No. 16-CV-6096(CJS), 2016 WL 7012961, at *5 (W.D.N.Y. Dec. 1, 2016).  In contrast, this Court has denied a summary judgment motion when a plaintiff alleged he was threatened by a specific correction that the officer would "break [plaintiff's] bones," and another specific correction officer threatened to beat plaintiff "a [sic] inch from life" if he filed a grievance.  Galberth v. Durkin, No. 914CV115(BKS/ATB),

2016 WL 3910270, at *3 (N.D.N.Y. July 14, 2016).

Here, plaintiff offers conclusory allegations in his complaint that "[he] was beaten" while attempting to access Clinton's grievance program. Compl. at 2, 3. Plaintiff offers no information of when or how he was threatened or beaten after the July 14, 2014 incident. Some instances of threats alleged by plaintiff refer to a time period before he filed a grievance and he does not state how any specific threat or subsequent act of violence impacted his ability to exhaust administrative remedies related to the events that occurred on July 14, 2014. See Aviles, 2016 WL 4619120, at *4 (finding grievance procedures available where plaintiff offers conclusory allegations of fear and does not substantiate what specific fears or past acts preclude him from advancing in grievance procedures); Harrison v. Stallone, No. 9:06-CV-902(LEK/GJD), 2007 WL 2789473, at *5 (N.D.N.Y. Sept. 24, 2007) ("It has been held that a 'general fear' of retaliation is not sufficient to excuse the exhaustion requirement. . . . If an inmate could simply state that he feared retaliation, there would no point in having a grievance procedure.") (citations omitted); see, e.g., Hummel Aff. Ex. A at 58. Much of plaintiff's fear is generalized. For instance, he notes that corrections officers become agitated when they see legal mail and "that's when harassment comes." Hummel Aff. Ex. A at 92. By his own admission, plaintiff denies any actual physical force being used against him that prohibited him from taking part in the grievance program. Hummel Aff. Ex. A at 99; see Salmon, 2016 WL 4411338, at *5 (stating there must be affirmative actions or specific instances of physical assault or threats of retaliation for plaintiff to show unavailability of the grievance process).

The Court notes that plaintiff directly contradicted allegations in his complaint by statements made in his deposition. While the complaint alleges conclusory instances of

being "beaten by staff," plaintiff admits that other than being cut on his face by an inmate in the yard on October 5, 2015, there has not been any other physical force used against him by inmates or correction officers since July 14, 2014. Hummel Aff. Ex. A at 99; Compl. at 3. This statement contradicts plaintiff's allegations of being beaten by staff. See Williams v. Doe, No. 12-CV-1147(HKS), 2016 WL 4804057, at *5 (W.D.N.Y. Sept. 14, 2016) (granting a motion for summary judgment after noting that any triable issue of fact on exhaustion of administrative remedies can be eliminated when plaintiff's prior representations to the court are "flatly contradict[ed]").

Further, this Court finds that plaintiff's failure to follow the grievance procedures cannot be excused by fears or intimidation, when he simultaneously made his complaints known through other means. After the alleged incident, plaintiff was seen by a nurse in a room with "about ten" officers, where he admits "having no choice," but to tell the nurse that they had beaten him. Hummel Aff. Exh. A at 57-58. Plaintiff also aired his complaints and concerns in writing outside of the grievance procedures, clearly identifying his complaints in full substance, including the identification of those who committed acts against him. See, e.g., Hummel Aff. Exh. A at 93; Gregory Decl. Exh. A at 8. Similarly in Johnson v. Fraizer, the Court rejected plaintiff's argument that administrative remedies were unavailable where the plaintiff alleged he was threatened by correction officers but continued to make and send formal complaints to prison officials and other New York State officials. Johnson v. Fraizer, No. 16-CV-6096 (CJS), 2016 WL 7012961, at *5 (W.D.N.Y. Dec. 1, 2016). By plaintiff's own admission, it is clear that he sought to file the initial grievance and tell others about his complaints, which disprove any claim of intimidation or fear of retaliation. Quick v. Omittee, No. 14-CV-1503(TJM/CFH), 2016 WL 5219732, at *4 (N.D.N.Y. Aug. 11, 2016),

report and recommendation adopted, No. 914CV1503 (TJM/CFH), 2016 WL 5107125
(N.D.N.Y. Sept. 20, 2016) (holding that fear of physical retaliation or assaults does not
deem grievance procedures unavailable when plaintiff continuously sought to file complaints
with officials). Like in Quick, where the plaintiff filed formal internal grievances and the
grievance procedures were deemed available, here the plaintiff alleges drafting two internal
grievances outlining the alleged July 14, 2014 incident. See id. at * 4; Hummel Aff. Exh. A
at 93; Gregory Decl. Exh. B at 8. Thus, plaintiff has not shown that administrative remedies
were unavailable due to intimidation and threats.

In conclusion, the Court finds that defendants have met their burden in showing that
there is no genuine issue of material fact as to plaintiff's failure to exhaust administrative
remedies. Accordingly, the Court recommends that defendants' motion be granted.


### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 26) on
plaintiff Edy Rodriguez's complaint (Dkt. No. 1) be **GRANTED**; and it is further

**RECOMMENDED** that plaintiff Edy Rodriguez's complaint (Dkt. No. 1) be
**DISMISSED** in its entirety, without prejudice; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report-Recommendation
and Order upon the parties in this action, pursuant to local rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the
foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO**

**OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.** <u>Roldan v. Racette</u>, 984 F. 2d 85, 89 (2d Cir. 1993); <u>Small v. Sec'y of HHS</u>, 892 F.

2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); F ED. R. CIV. P. 72, 6(a), 6(e).

Dated:   May 9, 2017
           Albany, New York

_____
Christian F. Hummel
U.S. Magistrate Judge